

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 13, 2026**

_____
**United States Bankruptcy Judge**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 25-40248-ELM |
| PIVOTAL MED SUPPLY, LLC, | § | |
| | § | Chapter 11 (V) |
| Debtor. | § | |
| | § | |
| NEXT SCIENCE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Adversary No. 25-04036 |
| | § | |
| PIVOTAL MED SUPPLY, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court for determination in this adversary proceeding (the "**Adversary**") is *Next Science, LLC's Motion to Dismiss Debtor, Pivotal Med Supply, LLC's Counterclaims* (the "**Dismissal Motion**") filed by Next Science, LLC (the "**Plaintiff**").[1]  Pursuant to the Dismissal Motion, Plaintiff requests the dismissal of each of the counterclaims (the "**Counterclaims**")

---

[1] Adversary Docket No. 65 (Dismissal Motion).

asserted by Pivotal Med Supply, LLC (the "**Defendant**") against Plaintiff within *Debtor Pivotal Med Supply, LLC's Answer to First Amended Complaint, Affirmative Defenses, and Counterclaims* (the "**Answer**"),[2] asserting in each case that the Defendant has failed to state a claim for which relief can be provided.

In opposition to the Dismissal Motion, Defendant has filed *Debtor Pivotal Med Supply, LLC's Opposition to Next Science, LLC's Motion to Dismiss Debtor's Counterclaims* and *Brief in Support of Debtor Pivotal Med Supply, LLC's Opposition to Next Science, LLC's Motino to Dismiss Debtor's Counterclaims* (collectively, the "**Response**").[3] In reply to the Response, Plaintiff has filed *Next Science, LLC's Amended Reply in Support of Its Motion to Dismiss Debtor's, Pivotal Med Supply, LLC's Counterclaims* (the "**Reply**").[4] On July 29, 2025, the Court conducted a hearing to entertain arguments of counsel.

Having now considered the Counterclaims, the Dismissal Motion, the Response, the Reply, and the representations and arguments of counsel, the Court issues this Order, finding cause to grant the Dismissal Motion with respect to both Counterclaims.

## I.
## PROCEDURAL BACKGROUND

On or about May 15, 2024, Plaintiff initiated litigation against Defendant and several others in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida (the "**State Court**"), under Case No. 16-2024-CA-002665-AXXX-MA (the "**State Court Case**").[5] On June

---

[2] Adversary Docket No. 52 (Answer).

[3] Adversary Docket Nos. 75 and 76 (collectively, the Response).

[4] Adversary Docket No. 83 (Reply).

[5] *See* Adversary Docket Nos. 1-2 (docket of State Court Case).

18, 2024, Plaintiff filed its *Verified Amended Complaint for Injunctive Relief, Damages, and Attorneys' Fees* in the State Court Case (the "**Amended Complaint**").[6]

On January 23, 2025, Defendant filed a voluntary petition for relief under chapter 11 (subchapter V) of the Bankruptcy Code with this Court, thereby initiating Case No. 25-40248 (the "**Bankruptcy Case**").[7]  On the same date, Defendant filed a *Notice of Removal* with the United States Bankruptcy Court for the Middle District of Florida (the "**Florida Bankruptcy Court**") to remove all of the claims and causes of action pending in the State Court Case to the Florida Bankruptcy Court pursuant to 28 U.S.C. § 1452(a), thereby initiating Adversary No. 3:25-mp-00001-BAJ with the Florida Bankruptcy Court (the "**Florida Adversary**").[8]  On or about March 5, 2025, the Florida Bankruptcy Court entered an *Order Granting Emergency Motion of Debtor Pivotal Med Supply, LLC to Transfer Venue of Adversary Proceeding* pursuant to which the Florida Adversary was transferred to this Court and re-docketed on March 7, 2025, as this Adversary, Adversary No. 25-04036.[9]

On April 8, 2025, Defendant filed its Answer in response to the Amended Complaint.[10] Within the Answer, Defendant has asserted the following Counterclaims against Plaintiff: Count I: Abuse of Process; and Count II: Violation of Section 1 of the Sherman Act (15 U.S.C. § 1).[11]

---

[6] Adversary Docket Nos. 1-19 to 1-31 (Amended Complaint).

[7] *See* Bankruptcy Case Docket No. 1.

[8] *See* Adversary Docket No. 1.

[9] *See* Adversary Docket No. 39-1 (Florida Bankruptcy Court's venue transfer order).  Thereafter, on June 4, 2025, the Court entered an *Order Granting in Part and Denying Part Next Science, LLC's First Amended Motion for Abstention and Remand of Removed Claims in Adversary Proceeding* pursuant to which all of the claims and causes of action asserted by Plaintiff against parties other than the Defendant were remanded to the State Court.  *See* Adversary Docket No. 77.

[10] Adversary Docket No. 52 (Answer).

[11] *See* Answer, at pp.36-48 (Counterclaims).

On June 13, 2025, the Court entered an *Unopposed Order Consolidating Proof of Claim No. 10 and the Debtor's Objection to Next Science, LLC's Proof of Claim No. 10 Into Adversary Proceeding No. 25-4036* whereby Defendant's objection in the Bankruptcy Case to the bankruptcy claim asserted by Plaintiff against Defendant has been consolidated with the Adversary for trial and all other purposes.[12]

## II.
## *JURISDICTION*

The Court has jurisdiction of the Adversary, including the Counterclaims asserted therein, pursuant to 28 U.S.C. §§ 1334 and 157 and *Miscellaneous Order No. 33: Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* (N.D. Tex. Aug. 3, 1984).   Venue of the Adversary in the Northern District of Texas is proper pursuant to 28 U.S.C. § 1409.

Because it does not appear that the adjudication of Plaintiff's bankruptcy claim (either by way of the determination of Plaintiff's causes of action in the Adversary or Defendant's objection to Plaintiff's bankruptcy claim which has been consolidated with the Adversary) will necessarily determine, or require the determination of, either of the Counterclaims, the Counterclaims are non-core in nature for purposes of 28 U.S.C. § 157(b)(1), notwithstanding the provisions of 28 U.S.C. § 157(b)(2)(C).[13]   However, both the Plaintiff and the Defendant have consented to the Court's entry of final order and final judgment with respect to the Counterclaims pursuant to 28 U.S.C. § 157(c)(2).[14]

---

[12] *See* Adversary Docket No. 80.

[13] *See Stern v. Marshall*, 564 U.S. 462, 503 (2011).

[14] *See* Docket No. 95 (transcript of Dismissal Motion hearing, wherein the Court provided the parties 21 days to either file a motion for withdrawal of the reference or be deemed to have consented to the entry of a final order and final judgment on the Counterclaims); Adversary Docket No. 90 (Plaintiff's notice of consent to the entry of final orders and a final judgment); Adversary docket (reflecting no request for withdrawal of the reference by any party).

### III.
### RELEVANT FACTUAL ALLEGATIONS

Within the portion of its Answer committed to the Counterclaims, Defendant alleges the following:

- Plaintiff systematically entered into employment agreements with its employees (the "**Employment Agreements**") that include restrictive, anti-competitive covenants (the "**Restrictive Covenants**"). The Restrictive Covenants preclude employees, upon the termination of employment with the Plaintiff and for a period of time defined as the Restrictive Period, from directly or indirectly working for or providing services to a competing organization with or relating to a Competing Product, which is defined as relating to biofilm eradication technology.[15]

- The Debtor sells durable medical equipment and wound care products but does not sell products related to biofilm eradication technology.[16]

- While the Plaintiff also does not sell biofilm eradication technology products, at the time of entering into the Employment Agreements, the only products Plaintiff endeavored to sell were biofilm eradication technology products.[17]

- Shortly after early 2024, Plaintiff began a campaign of harassment against Defendant through cease and desist letters and the commencement of litigation to obtain a blanket prohibition against any competition with Plaintiff anywhere in the world by Defendant and its employees who are ex-employees of Plaintiff.[18]

- After threats from Plaintiff, Defendant's employees who are ex-employees of Plaintiff stopped selling products of the Defendant that are not biofilm eradication technology products.[19] Defendant has also frozen certain of its hiring practices because of Plaintiff's actions, harming sales.[20]

- Plaintiff uses the Restrictive Covenants of the Employment Agreements to prevent competition with the Plaintiff in the wound care market by other competitors to the detriment of consumers.[21] Plaintiff's actions have caused such other competitors

---

[15] *See* Answer ¶¶ 290-291.

[16] *See* Answer ¶ 288.

[17] *See* Answer ¶¶ 289, 293, 309-310.

[18] *See* Answer ¶¶ 297-299, 304-305, 328.

[19] *See* Answer ¶¶ 298, 300.

[20] *See* Answer ¶¶ 302, 311-313, 315.

[21] *See* Answer ¶¶ 301, 314, 334.

to stop selling certain products and stop hiring certain sales representatives, stifling competition.[22]

- Plaintiff's conduct has substantially foreclosed competition in the wound care market in "relevant geographical markets," including the United States and Florida.[23]

- Plaintiff has market power in the "relevant product and geographical markets," including the power to control prices and exclude competition.[24]

- Consumers in the "relevant markets" have been harmed by increased prices and/or the reduced output and availability of alternative quality providers of the "relevant products."[25]

*IV.*
*APPLICABLE STANDARDS AND ANALYSIS*

*A.    Dismissal Standards*

Pursuant to Federal Rule of Civil Procedure 12(b)(6) (made applicable to the Adversary by Federal Rule of Bankruptcy Procedure 7012(b)), on motion of a counter-defendant filed prior to the filing of an answer to a counterclaim, the counterclaim is subject to dismissal if the pleading in which the counterclaim is asserted fails to state a claim upon which relief can be granted.[26] "To survive a motion to dismiss, a [counter-complaint] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[27] "A claim has facial plausibility when the [counter-plaintiff] pleads factual content that allows the court to draw the reasonable inference that the [counter-defendant] is liable for the misconduct alleged."[28]

---

[22] *See* Answer ¶ 303.

[23] *See* Answer ¶ 332.

[24] *See* Answer ¶ 333.

[25] *See* Answer ¶ 337.

[26] *See* Fed. R. Civ. P. 12(b)(6); *see also* Fed. R. Bankr. P. 7012(b).

[27] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Baron v. Sherman (In re Ondova Ltd. Co.)*, 914 F.3d 990, 992-93 (5th Cir. 2019).

[28] *Iqbal*, 556 U.S. at 678.

In assessing facial plausibility, a court is to accept as true all well-pleaded factual allegations set forth within the pleading for relief, even if doubtful in fact.[29]  But the allegations must consist of more than mere labels and conclusions.[30]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[31]  Additionally, the well-pleaded complaint rule is inapplicable to legal conclusions.[32]  Courts "are not bound to accept as true 'a legal conclusion couched as a factual allegation.'"[33]

The determination of facial plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense" in applying the foregoing principles.[34]  While "[t]he plausibility standard is not akin to a 'probability requirement,' [ ] it asks for more than a sheer possibility that a defendant has acted unlawfully."[35]  Thus, to avoid dismissal, the "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"[36]

### B.      The Abuse of Process Counterclaim

Starting, first, with the abuse of process Counterclaim, based upon the situs of the alleged conduct at issue (*i.e.*, Florida), the parties agree that the claim is governed by Florida law.  Under Florida law, "[a] cause of action for abuse of process contains three elements: (1) that the [counter-defendant] made an illegal, improper, or perverted use of process; (2) that the [counter-defendant] had ulterior motives or purposes in exercising such illegal, improper, or perverted use of process;

---

[29] *Twombly*, 550 U.S. at 555; *Allen v. Walmart Stores, LLC*, 907 F.3d 170, 177 (5th Cir. 2018).

[30] *Twombly*, 550 U.S. at 555.

[31] *Iqbal*, 556 U.S. at 678; *see also Allen*, 907 F.3d at 177 (explaining that "'naked assertion[s]' devoid of 'further factual enhancement'" are not sufficient to prevent dismissal) (quoting *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)).

[32] *Iqbal*, 556 U.S. at 678.

[33] *Ondova Ltd. Co.*, 914 F.3d at 993 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[34] *Iqbal*, 556 U.S. at 679.

[35] *Id.* at 678.

[36] *Twombly*, 550 U.S. at 555.

and (3) that, as a result of such action on the part of the [counter-defendant], the [counter-plaintiff] suffered damage."[37]   The gist of Defendant's abuse of process Counterclaim is that Plaintiff allegedly had an "ulterior purpose" (*i.e.*, to unfairly stifle competition) in filing suit against Defendant and in thereafter pursuing preliminary injunctive relief against Defendant based upon allegedly unenforceable Restrictive Covenants within the Employment Agreements.

Pursuant to the Dismissal Motion, Plaintiff asserts that Defendant has failed to allege facts within the Answer that, taken as true, satisfy the first element of the claim – the illegal, improper, or perverted use of process.   The Court agrees.   In this regard, Defendant fails to both (a) understand what "process" means for purposes of the claim, and (b) appreciate that the permissible use of "process," even if ultimately determined to relate to a non-meritorious claim, is not actionable.

First, for an abuse of process claim, "process" does not refer to the general thought "process," strategy, motives, or course of conduct undertaken by a party to pursue a claim; instead, "process" refers to a formal mandate or writ issued by the court that compels action on the part of another, such as a summons, a subpoena, or a court order.   Second, in order for a party to establish an abusive use of such process once issued, the complaining party must establish that instead of having the process served or executed in a legally permissible manner, the opposing party made an illegal, improper, or perverted use of the process.   Importantly, "the mere filing of a complaint and having process served is not enough to show abuse of process."[38]   Instead, "[t]he [counter-plaintiff] must prove improper use of process after it issues."[39]

---

[37] *S&I Invs. v. Payless Flea Market, Inc.*, 36 So.3d 909, 917 (Fla. App. 4th DCA), *review denied*, 46 So.3d 48 (Fla. 2010).

[38] *Della-Donna v. Nova Univ., Inc.*, 512 So.2d 1051, 1055 (Fla. App. 4th DCA 1987).

[39] *S&I Invs.*, 36 So.3d at 917.

Here, Defendant has failed to allege any illegal, improper, or perverted use of any identified process that was issued by any court. Instead, Defendant appears to complain about Plaintiff's motives in commencing the State Court Case and in prosecuting the claims and injunctive requests asserted therein. Such actions, however, are not enough to establish an abuse of process claim. Therefore, Defendant's abuse of process Counterclaim will be dismissed for failure to state a claim for which relief can be provided.[40]

## C.     The Sherman Act Counterclaim

Next, with respect to Defendant's Sherman Act Counterclaim, section 1 of the Sherman Act (codified within title 15 of the United States Code) provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."[41] Section 4 of the Clayton Act (also codified within title 15 of the United States Code) provides a private right of action to any person "who shall be injured in his business or property by reason of anything forbidden in the antitrust laws."[42]

While extremely broad in language, the foregoing provisions must be construed in context, appreciating that the "Sherman Act was enacted to assure customers the benefit of price competition" and that the common law foundation on which the provisions rest "emphasized the central interest in protecting the economic freedom of participants in the relevant market."[43] As explained by the Supreme Court:

---

[40] *See also EMI Sun Village, Inc. v. Catledge*, 779 Fed. Appx. 627, 635-36 (11th Cir. 2019) (explaining that the litigation privilege applies to actions for abuse of process and that any act occurring during the course of a judicial proceeding is absolutely immune so long as the act has some relation to the proceeding).

[41] 15 U.S.C. § 1.

[42] *See id.* § 15(a); *see also id.* § 7 (defining "person" as including any entity organized under state law).

[43] *See Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 538 (1983).

> One problem presented by the language of § 1 of the Sherman Act is that it cannot mean what it says.  The statute says that "every" contract that restrains trade is unlawful.  But as Mr. Justice Brandeis perceptively noted, restraint is the very essence of every contract; read literally, § 1 would outlaw the entire body of private contract law….
>
> Congress, however, did not intend the text of the Sherman Act to delineate the full meaning of the statute or its application in concrete situations.  The legislative history makes it perfectly clear that it expected the courts to give shape to the statute's broad mandate by drawing on common-law tradition.[44]

Taking into account the common law tradition, "the phrase 'restraint of trade' is best read to mean 'undue restraint.'"[45]

In evaluating whether a contract to restrain trade or commerce is an "undue" restraint, "[t]he Rule of Reason … has been regarded as a standard for testing the enforceability of covenants in restraint of trade which are ancillary to a legitimate transaction, such as an employment contract…."[46]  "The rule of reason requires courts to conduct a fact-specific assessment of 'market power and market structure … to assess the [restraint]'s actual effect' on competition."[47]  In undertaking such assessment, the objective is to "distinguis[h] between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest."[48]  Thus, to adequately state a claim that is sufficient to frame such analysis, a "complaint must plausibly define the relevant product and geographic markets" at issue.[49]  "Where the [counter-plaintiff] fails to define its proposed relevant market with reference

---

[44] *National Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 687-88 (1978) (citations omitted).

[45] *Ohio v. American Express Co.*, 585 U.S. 529, 540 (2018) (quoting *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 59-60 (1911)).

[46] *National Soc'y of Prof'l Eng'rs*, 435 U.S. at 689.

[47] *American Express Co.*, 585 U.S. at 541 (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984)).

[48] *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007).

[49] *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010), *cert. denied*, 562 U.S. 1217 (2011).

to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in [counter-plaintiff's] favor, the relevant market is legally insufficient, and a motion to dismiss may be granted."[50]

Additionally, "lower federal courts have been 'virtually unanimous in concluding that Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation.'"[51]  Instead, an antitrust complainant "must do more than meet the requirements of Article III to establish its standing to bring suit."[52] "Standing to pursue an antitrust suit exists only if a [counter-plaintiff] shows: 1) injury-in-fact, an injury to the [counter-plaintiff] proximately caused by the [counter-defendant's] conduct; 2) antitrust injury; and 3) proper [counter-plaintiff] status, which assures that other parties are not better situated to bring suit."[53]  In relation to the second element of such standing, to qualify as an "antitrust injury," the "injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation."[54]  In other words, it is not enough for a complainant to show that it, alone, suffered a loss as a result of an unfair competitive edge that an

---

[50] *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 628 (5th Cir. 2002).

[51] *Associated Gen. Contractors of Cal., Inc.*, 459 U.S. at 534 (quoting *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 263 n.14 (1972)).

[52] *Sanger Ins. Agency v. HUB Int'l, Ltd.*, 802 F.3d 732, 737 (5th Cir. 2015).

[53] *Jebaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318 (5th Cir. 2009) (quoting *Doctor's Hosp. of Jefferson, Inc. v. Southeast Med. Alliance*, 123 F.3d 301, 305 (5th Cir. 1997) (citations omitted)); *see also Sanger Ins. Agency*, 802 F.3d at 737.

[54] *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).

opposing party achieved on account of anticompetitive conduct.[55]  Instead, the complainant must establish an injury to competition, itself.[56]

Pursuant to the Dismissal Motion, Plaintiff asserts that Defendant's Sherman Act Counterclaim is deficient for at least the following three reasons: (i) the Defendant has failed to identify any contract, combination, or conspiracy in restraint of trade or commerce; (ii) the Defendant has failed to adequately allege an undue restraint on trade that would pass muster under the rule of reason, noting, among other things, that the Defendant has not plausibly defined the relevant product and geographical markets at issue; and (iii) the Defendant has failed to plausibly allege an antitrust injury.  The Court agrees on all fronts.

First, to state a claim under § 1 of the Sherman Act, a complainant must identify an actual contract, combination, or conspiracy in restraint of trade or commerce.  Here, focusing on the Employment Agreements, Defendant appears to argue that § 1 is satisfied by the Plaintiff's alleged reliance upon the Restrictive Covenants of the Employments Agreements in issuing allegedly anti-competitive cease and desist letters and in filing litigation for anti-competitive purposes.  However, Defendant skips past the fact that, according to the Defendant's own allegations, the terms of the Restrictive Covenants do not restrain any trade or commerce at all because neither the Plaintiff nor the Defendant sells any biofilm eradication technology products – the focus of the Restrictive Covenants.  Instead, Defendant's complaint appears to be that Plaintiff has *improperly* relied upon the terms of the Restrictive Covenants in an effort to restrain trade or commerce with respect to products *other than* biofilm eradication technology products.  In doing so, however, Defendant's

---

[55] *See Pulse Network, LLC v. Visa, Inc*., 30 F.4th 480, 489 (5th Cir. 2022) ("Loss from competition itself – that is, loss in the form of customer's choosing the competitor's goods and services over the plaintiff's – does not constitute antitrust injury, even if the defendant is violating antitrust laws in order to offer customers that choice").

[56] *See Brunswick*, 429 U.S. at 488 ("The antitrust laws, however, were enacted for 'the protection of *competition*, not *competitors*'") (quoting *Brown Show Co. v. United States*, 370 U.S. 294, 320 (1962) (emphasis in orig.)).

own allegations negate the existence of a contract which, in fact, restrains any trade or commerce. As such, Defendant has failed to plausibly allege a violation of § 1 of the Sherman Act, warranting dismissal of the Sherman Act Counterclaim.[57]

Second, even if Defendant were able to overcome such problem and focus on products other than biofilm eradication technology products, then with respect to allegations relating to an undue restraint on trade, Defendant has also failed to both adequately identify the particular products at issue and the particular geographical area allegedly affected by the Plaintiff's alleged conduct.  With respect to the products at issue, the only products expressly identified by Defendant are Revyve and XLTA.[58]  Outside of that, Defendant only generically refers to "certain of [Defendant's] *non*-biofilm eradication technology products,"[59] "certain products" of other competitors of Plaintiff,[60] "certain of [Defendant's] products,"[61] "available wound care products,"[62] and "*any product* that competes with [Plaintiff]."[63]  With respect to the affected geographical area, Defendant makes several references to "anywhere in the world"[64] and one reference to "relevant geographical markets, including the United States and Florida."[65]  Such generalities are insufficient to adequately identify the relevant products and markets at issue.  Thus,

---

[57] Additionally, to the extent Defendant is claiming that Plaintiff has knowingly initiated litigation for the improper purpose of pursuing meritless Restrictive Covenant claims in an effort to restrain trade or commerce, such conduct is immune from liability under the Sherman Act.  *See, e.g., Andrx Pharms., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1233-34 (11th Cir. 2005) ("[A]s the Supreme Court has noted, engaging in litigation to seek an anticompetitive outcome from a court is First Amendment activity that is immune from antitrust liability").  The proper recourse is, instead, a request for relief under Fed. R. Bankr. P. 9011.

[58] *See* Answer ¶¶ 298, 306.a., 306.b., 306.e.

[59] *See* Anwer ¶ 300 (emphasis in orig.).

[60] *See* Answer ¶ 303.

[61] *See* Answer ¶ 312.

[62] *See* Answer ¶ 315.

[63] *See* Answer ¶ 328 (emphasis in orig.).

[64] *See* Answer ¶¶ 287, 297, 328.

[65] *See* Answer ¶ 332.

because Defendant has failed to define "its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand," and "alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products," the targeted "relevant market" in the Counterclaim is legally insufficient, warranting dismissal of the Sherman Act Counterclaim.[66]

Finally, and equally important, Defendant has failed to allege any antitrust injury associated with the Restrictive Covenants of the Employment Agreements. As previously indicated, the "contracts" purporting to restrain trade or commerce for purposes of § 1 of the Sheman Act are the Employment Agreements. According to Defendant, the Restrictive Covenants of the Employment Agreements prevent competition with respect to products related to biofilm eradication technology. Defendant alleges that neither Plaintiff nor Defendant sells such products. And nowhere within the Answer is there a single allegation that any market participant has been prevented from selling any products related to biofilm eradication technology. Instead, Defendant asserts that Plaintiff's actions have had a negative effect upon trade and commerce involving products *other than* products related to biofilm eradication technology. According to Defendant, however, the Restrictive Covenants of the Employment Agreements do *not* restrict any action with respect to products *other than* products related to biofilm eradication technology. Thus, because Defendant has failed to plausibly allege an antitrust injury caused by the Employment Agreements, the Sherman Act Counterclaim must be dismissed.

---

[66] *See Apani Sw., Inc.*, 300 F.3d at 628.

*V.*
*CONCLUSION AND ORDER*

Based upon all of the foregoing, the Court finds cause to grant the Dismissal Motion and dismiss each of the Counterclaims pursuant to Federal Rule 12(b)(6) for failure to state a claim for which relief may be granted.  Accordingly, it is hereby:

**ORDERED** that the Dismissal Motion is GRANTED; and it is further

**ORDERED** that each of Defendant's Counterclaims is hereby DISMISSED with prejudice.

# # #   END OF MEMORANDUM OPINION AND ORDER   # # #